Robert B. Sykes (3180)
    bob@sykesmcallisterlaw.com
Alyson C. McAllister (9886)
    alyson@sykesmcallisterlaw.com
C. Peter Sorensen (16728)
    pete@sykesmcallisterlaw.com
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 South State Street, Suite 240
Salt Lake City, Utah 84111
Telephone (801) 533-0222
***Attorneys for Plaintiff***

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| MISTY COX, as mother and guardian of Child Doe,<br>            *Plaintiff*,<br><br>      vs.<br><br>SOUTH SANPETE SCHOOL DISTRICT; and KENT LARSEN, TREVOR POWELL, RHETT JACKSON, and JARED ANDERSON, in their official and individual capacities,<br>            *Defendants*. | **Civil No. _____**<br><br><br>**COMPLAINT**<br>**and**<br>**JURY DEMAND**<br><br>Judge _____<br>Magistrate Judge _____ |

Plaintiff Child Doe, by his mother and guardian Misty Cox, alleges against Defendants South Sanpete School District ("SSSD" or "District"), Kent Larsen, Trevor Powell, Rhett Jackson, and Jared Anderson, as follows:

### PRELIMINARY STATEMENT

This is a civil rights case brought by Child Doe, a student subjected to a sexual assault, sexual violence and bullying by three of his male peers before a school football practice. Additionally, there was verbal harassment and bullying that occurred after the assault, as well as threats of physical harm. These acts occurred in the South Sanpete County public school district

1

(SSSD) and went unchecked by officials with authority to stop them.  Central to this case is the pervasive and extensive history of student-on-student sexual assault in Gunnison schools, which was known to Defendants for two years prior to the assault on Child Doe.  These assaults had been allowed to occur by Defendants without significant consequence.  These individual Defendants refused to recognize that forcible anal and genital rubbing on a student's face while being held down is sexual assault—regardless of whether the victim is male or female. Instead, Defendants treated this conduct as normal "horseplay" between boys or, at worst, some form of acceptable hazing.  It is not horseplay—or hazing—or harmless when two students pin a 14-year-old child down while another student forcibly rubs his buttocks, testicles, and penis in all over the child's face, in front of members of the football team.  It is not horseplay or hazing when the perpetrators were allowed to continue to participate in football activities while on a 3-day suspension and were allowed to call Child Doe a "Snitch Bitch" in front of other students and harass him for reporting his assault.

Contrary to their obligations to prevent and address sexual harassment or assault, Defendants ignored, minimized and dismissed it.  As a result, they gave at least three male students at Gunnison Valley High School a free pass to continue—and escalate—their abuse of Child Doe and other students.  Sexual harassment and bullying has been a relentless and inescapable aspect of Child Doe's life at Gunnison Valley High School. The abuse, combined with the school district's failure to take any meaningful action to stop it, despite knowledge of prior sexual assaults by the same perpetrators, has derailed Child Doe's education and traumatized him emotionally and psychologically. He continues to suffer relentless harassment and accusation of racism.  He has been continually harassed at the hands of his tormentors, he has been alienated from the football

2

team, while trying to play a sport he loves, and he has had to be evaluated by mental health counselors to address the trauma he has suffered.

Defendants acted with deliberate indifference to the sexual harassment and assaults suffered by Child Doe. Their practice of ignoring student-on-student sexual assault—and treating it as normal "horseplay," "hazing," or "boys-will-be-boys"—is blatant sex discrimination under the law. This long-standing knowledge by these Defendants shows the school and the SSSD had notice of these problems.  It is evidence of the school district's failure to adequately train administrators and employees to: recognize, prevent, and address sexual assault or harassment and bullying; educate students about district policies and procedures on harassment, intimidation, and bullying; and enforce those policies and procedures.

This lawsuit alleges violations of Title IX of the Education Amendments of 1972 and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. §1983. Child Doe seeks injunctive relief and damages to remedy these violations. In September of 2018, because of Doe's allegations, the police began investigating allegations of student-on-student sexual assault in Gunnison schools.  Since that time, at least 15 other students have come forward with similar or more extreme accounts of their victimization by these same three perpetrators, and it appears SSSD was complicit in the assault of all these children.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1334 because the matters in controversy arise under the Constitution and the laws of the United States. Specifically, Plaintiff asserts claims under Title IX of the Education Amendments of 1972, 20 U.S.C § 1681 *et seq.*, and the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within this district.

### PARTIES

3.      Plaintiff Child Doe is a 14-year-old male who resides with his mother, Misty Cox, in Mayfield, Utah. Child Doe is a freshman and attends Gunnison Valley High School, part of the South Sanpete School District. Child Doe is suing Defendants through his mother and general guardian, Misty Cox.

4.      Defendant South Sanpete School District is a public school district located in Sanpete County, Utah.  Defendant South Sanpete School District is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a) and a "person" within the meaning of 42 U.S.C. § 1983.

5.      Defendant Kent Larsen ("Larsen"), sued in his official and individual capacities, was at all relevant times the Superintendent of South Sanpete School District, and was an agent and/or employee of SSSD, acting within the scope and course of his employment.

6.      Defendant Trevor Powell ("Powell"), sued in his official and individual capacities, was at all relevant times the Principal of Gunnison Valley High School, and was an agent and/or employee of SSSD, acting within the scope and course of his employment.

7.      Defendant Rhett Jackson ("Jackson"), sued in his official and individual capacities, was at all relevant times the Vice-Principal of Gunnison Valley High School, and was an agent and/or employee of SSSD, acting within the scope and course of his employment.

8.      Defendant Jared Anderson, sued in his official and individual capacities, was at all relevant times the Athletic Director of Gunnison Valley High School, and was an agent

and/or employee of SSSD, acting within the scope and course of his employment. Anderson is also the father of two of Child Doe's attackers.

## FACTUAL ALLEGATIONS

9.      On July 26, 2018, Child Doe moved with his mother, Misty Cox, to Mayfield, Utah.

10.     Child Doe began attending Gunnison Valley High School ("GVHS"), part of SSSD, as a freshman student during the 2018-2019 academic year.

11.     Within weeks of his arrival at GVHS, Child Doe was sexually assaulted by three students.

### Sexual Harassment/Bullying of Child Doe, and Defendants' Inadequate Response

12.     During September 2018, a male student at GVHS who was a large football player, "Student #1," started to tease Child Doe about a disability he has, called Dwayne's Syndrome, where Child Doe has a paralyzed muscle in one eye.

13.     At least one such incident occurred in the presence of Child Doe's coaches, who were employees of GVHS.

14.     Upon information and belief, Student #1 was never disciplined for these teasing incidents.

15.     On or about September 17, 2018, Student #1 was involved in sexually assaulting Child Doe in front of many of the football team before practice was starting.  Student #2 and Student #3 restrained Child Doe, tackling and pinning him to the ground, while Student #1 rubbed his penis, testicles and buttock all over the face of Child Doe.  Several students stood nearby laughing.

16.     Approximately 15 students witnessed this abuse.

17.     The attack would have continued longer if another student had not rushed to Child Doe's aid and shoved the attackers off.

18.     Child Doe reported this sexual assault to the school Resource Officer, Carl Wimmer, the day after it happened.

19.     Wimmer is a member of the Gunnison City Police Department ("GCPD").

20.     Shortly after being informed about the sexual assault, Mr. Wimmer informed Child Doe's mother, Misty Cox, and began a police investigation into sexual assaults by Students 1, 2, and 3.

21.     Child Doe's stepfather, Jerry Cox, called the School Superintendent, Defendant Larsen, to discuss the way the incident was to be handled.

22.     Defendant Larsen characterized the incident as just "boys being boys," and football "hazing" that "went too far."  He invited Mr. Cox to tell Misty Cox to come to his office to talk to him.

23.     Misty Cox did go to Defendant Larsen's office with Child Doe and expressed her concerns and relayed that Child Doe had been called a "snitch bitch" by Student #1 and Student #2 at football practice during their school suspension.

24.     During that meeting, Defendant Larsen dismissed any referral of the incident as a sexual assault, and again mischaracterized it as "just boys wrestling around, and they crossed the line."

25.     Defendant Larsen refused to acknowledge the fact that these students had retaliated by calling Child Doe a "snitch bitch."

26.     Misty Cox also reported to Defendant Larsen that one of the boys at this same practice was trying to intimidate Child Doe, and told him that, "I was charged with rape and got away with it, and charged with sexting and got away with it, and I'll get away with this too!"

27.     Defendant Larsen's reply was: that "didn't happen."

28.     Misty also asked about the offending students' suspension, but still being allowed to come to football practice, and Defendant Larsen told her that he couldn't give any details of the disciplining, just that they were following "policy."

29.     That statement was false and contrary to policy.

30.     Defendant Larsen asked the Doe family to let him handle the matter, and said the students involved in the incident would be investigated and punished.

31.     The Doe family did not receive any notice disposition from GVHS regarding of the assault on their son.  They were only informed about the so-called "punishment" because Mr. Wimmer told them.

32.     On information and belief, no one from the school functioning in any official capacity ever informed Misty Cox that the students that assaulted Child Doe had a long and storied history of assault on other students, a history that dated back two years.

33.     On information and belief, Rhett Jackson, the Vice-President of GVHS, was responsible for the discipline of the Students.

34.     On information and belief, Jackson disciplined the attackers by suspending them from school for three school days.

35.     Jackson did not report the matter to the police, as he was required to do by school policy and probably by state law.

36.    The attackers essentially were rewarded with three days off from school for sexually assaulting a student.

37.    Despite the "suspension," the attackers were allowed to attend football practice and were not "suspended" from their participation on the football team.

38.    Trevor Powell, GVHS's principal, told Misty Cox, "The boys would be suspended and miss some games, but he would not go into details of their punishment."

39.    Misty also expressed her concerns about the retaliation of being called a "snitch bitch" at football practice to Defendant Powell and asked why these boys were allowed at practice while on school suspension.

40.    Defendant Powell said, "they did not want to ostracize the boys from the team."

41.    Soon after Student #2 was suspended, Student #2's friends began to verbally harass Child Doe on a daily basis, calling him "snitch bitch."

42.    The harassment quickly spread among the high school students, many of whom began regularly calling Child Doe "snitch bitch."

43.    Nearly every day after Child Doe reported the sexual assault, students verbally harassed him about the sexual assault he suffered and the fact that he reported it.

44.    Although Child Doe no longer gets called a snitch, he still gets whispers and dirty looks from the friends of Student #1, Student #2 and Student #3.

45.    On or about September 24, 2018, when Misty found out the three student offenders were going to be allowed back at school, she was concerned about Child Doe's safety because of the retaliation that had already happened.

46.     On that day, at approximately 8:30 a.m., Misty called the school and spoke to Defendant Powell to ask if she needed to remove Child Doe from school.

47.     Defendant Powell said Child Doe would be "just fine," as they "already spoken to the boys about retaliation and that isn't a concern."

48.     Misty was still concerned, so she asked if the two brothers were in attendance that day.

49.     Defendant Powell put her on hold so he could "check," and when he came back to the phone he said that they were marked absent that day.

50.     Misty found out when Child Doe got home after school that the student offenders had been in attendance that day, and Child Doe felt he needed to avoid them in the halls.

51.     On or about October 1, 2018, when news broke of the sexual assaults and Misty appeared on the news speaking out on behalf of her son, she received messages from a member of the Anderson family, which she felt were threatening.  This was so concerning that Misty reported it to the police.

52.     On or about October 1, 2018, Mr. Cox met with Defendant Powell, who claimed he meets or talks to Child Doe on a daily basis to see if he is okay; but at that point Child Doe had only spoken to him once.

53.     The school counselor called Misty approximately two weeks after the incident, asking if she could talk to Child Doe in her office a couple times a week to make sure he was okay.

54.     Misty agreed that Child Doe should meet with the counselor, but to date she has only spoke to Child Doe once in passing in the hall.  So, Misty has found an outside therapist to see Child Doe.

55.     Since Child Doe's sexual assault, at least 15 other students have come forward with varying accounts of their own personal and sexual assaults by the same students.

56.     The SSSD and school officials had absolute knowledge of these attacks dating back over two years.

57.     Defendants Larsen, Powell, Jackson, and Anderson, and therefore the SSSD, were all aware for years that Student #1 and his brother Student #2 and friend Student #3 were assaulting other students

58.     They did nothing to stop the assaults.

59.     Defendants Larsen, Powell, Jackson, and Anderson are all very close personal friends outside of their roles and responsibilities in the school.

### Impact of Unchecked Harassment and Bullying on Child Doe

60.     The Defendants' failure to take meaningful action to address the sexual assaults, harassment, and bullying Child Doe experienced at GVHS deprived him of educational opportunities.

61.     Child Doe and his family continue to face harassment and threats in their small community and especially in school. Child Doe has reservations about playing football, his favorite sport, because of concerns about being sexually abused or harassed by Student #1 and his friends in the future.

62.     Child Doe and his parents have continued concern that future children will fall victim to these types of attacks and that the school administration will be deliberately indifferent to their claims as they have proven to be in the past.

63.     The sexual assaults, harassment, and bullying that Child Doe has experienced at Gunnison Valley High School, and the Defendants' failure to take meaningful action to address this, has traumatized Child Doe psychologically and emotionally.

64.     Child Doe is being treated by therapists and counselors to address the trauma he has suffered at GVHS.

65.     "Institutional betrayal" or "betrayal trauma" occurs specifically when an institution, such as a school, fails to prevent or respond supportively to wrongdoing perpetrated on an individual within the context of an institution.

66.     Child Doe may also require additional special education services to accommodate the emotional and mental health conditions he has as a result of the peer abuse and school officials' failure to support him.

## FIRST CAUSE OF ACTION

### Sexual Assault/Harassment at School

**In Violation of Title IX, 20 U.S.C. § 1681 *et seq.***
***Against Defendant South Sanpete School District***

67.     Plaintiff incorporates by reference all other paragraphs herein.

68.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, ***or be subjected to discrimination under any education program or activity*** receiving Federal financial assistance . . . .

*Id.* (emphasis added).

69.     Title IX is implemented through the Code of Federal Regulations, which provides:

> . . . A recipient shall adopt and publish grievance procedures providing for ***prompt and equitable resolution of student and employee complaints*** alleging any action which would be prohibited by this part.

*See* 34 C.F.R. Part 106. 34 C.F.R. § 106.8(b) (emphasis added).

70.     On April 4, 2011, the United States Department of Education, Office for Civil Rights, addressed a "Dear Colleague letter," as a "significant guidance document" for persons interested in policy guidance with respect to Title IX.  That letter provides:

> Education has long been recognized as the great equalizer in America. The U.S. Department of Education and its Office for Civil Rights (OCR) believe that providing all students with an educational environment free from discrimination is extremely important. The sexual harassment of students, including sexual violence, interferes with students' right to receive an education free from discrimination and, in the case of sexual violence, is a crime.
>
> Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and its implementing regulations, 34 C.F.R. Part 106, prohibit discrimination on the basis of sex in education programs or activities operated by recipients of Federal financial assistance. ***Sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by Title IX.***

Letter, United States Dept. of Education, Office for Civil Rights, Russlynn Ali, Assistant Secretary for Civil Rights, April 4, 2011 (emphasis added).

71.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court held that a recipient of federal funds violates Title IX, and is subject to a private damages action, where the funding recipient is "deliberately indifferent" to known acts of teacher-on-student sexual harassment.

72.     In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court similarly recognized that federal fund recipients are subject to private damages actions under Title IX in cases of student-on-student sexual harassment.

73.     The court in *Davis* held that a plaintiff in a student-on-student harassment case may prevail in a Title IX damages action against a school district where the school district is "deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Davis*, 526 U.S. at 646-647.

74.     The court further concluded that the school district can be held liable where they have "actual knowledge" of sexual harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650.

75.     Prior to the assault on Child Doe, SSSD had actual knowledge that other students had experienced similar sexual assaults and harassment at Gunnison Valley High School based on, *inter alia*, other students' reports to Defendants.

76.     SSSD was obligated to address these reports because student-on-student sexual assault and harassment are forms of sex discrimination prohibited by Title IX.

77.     SSSD was also obligated to address these other reports of sexual assault under Title IX because SSSD, through the other Defendants, had control over the students who committed the assaults as well as the school or schools where the assaults and harassment occurred—i.e., Gunnison Valley High School.

78.     The individuals with actual knowledge, including Defendants Larsen, Powell, Jackson, and Anderson, had the authority and ability to investigate and take meaningful corrective action to end or prevent future sexual assaults and harassment, such as that endured by Child Doe, but failed to do so.

79.     SSSD, through Defendants Larsen, Powell, Jackson, and/or Anderson, was obligated to address these reports under its District Policy, which, *inter alia*, requires that "[a]ll acts…will be promptly reported to law enforcement." SSSD and Defendants failed to do this.

80.     The sexual assaults and harassment that multiple students inflicted on Child Doe and others were severe, pervasive, objectively offensive, and effectively deprived Child Doe of access to educational opportunities and benefits provided by GVHS.

81.     The sexual assaults and harassment Child Doe suffered created a hostile educational environment at GVHS based on Child Doe's sex.

82.     SSSD, by its acts and omissions, created a hostile educational climate where student-on-student sexual assaults and harassment were tolerated.

83.     Such tolerance of sexual assaults encouraged repeated sexual harassment and assault, and proximately caused injuries to Child Doe.

84.     By its acts and omissions, SSSD, through Defendants Larsen, Powell, Jackson, and Anderson, was deliberately indifferent to Child Doe's and other student reports of sexual assault and harassment.  All Defendants were deliberately indifferent to the sexually hostile education environment which led to the assault on Child Doe, because the District failed to take meaningful corrective action when it knew of prior assaults by the same students who assaulted Doe.

85.     The District's deliberate indifference included the matters set forth above, as well as at least the following:

a)      Refusing to treat Child Doe's reports of forcible face rubbing of another student's penis, testicles, and bottom by male students as reports of sexual assault;

14

b)      Characterizing the sexual assaults Child Doe reported as normal "hazing," "horseplay," "boys-will-be-boys" or "harmless conduct";

c)      Refusing to investigate Child Doe's or previous students reports of sexual assault, instead investigating them as "accidental" or "incidental" or "horseplay";

d)      Acknowledging or implying that it would treat reports of this type of conduct differently and would have called the police if the victim had been a female student;

e)      Creating a hostile educational climate that tolerates student-on-student sexual assault, harassment, retaliation and threats of bodily harm;

f)      Prioritizing the athletic careers of the accused male students over Child Doe's safety and education, and over its obligation to conduct an appropriate investigation into Child Doe's reports of sexual assault, harassment, retaliation, and threats of bodily harm;

g)      Deciding not to investigate or seriously discipline students who subjected Child Doe to severe and pervasive verbal harassment for being sexually assaulted and reporting it;

h)      Failing to appropriately discipline the students involved in sexually assaulting Child Doe;

i)      Failing to offer, provide, recommend, or coordinate psychological, counseling, and academic assistance and services to Child Doe after he reported the sexual assaults, harassment, retaliation, and threats;

j)      Failing to take meaningful action to correct the conditions causing the sexual harassment and to prevent recurrence of the harassment;

k)      Failing to report prior suspected sexual assault in violation of, and as mandated by, the School Policy;

l)      Failing to provide adequate training for its administrators and employees on sexual harassment and assault, retaliation, and mandatory reporting;

m)      Failing to inform Child Doe or his parents of Child Doe's rights under Title IX or to direct Child Doe to a Title IX coordinator; and

n)      Failing to appoint or employ a Title IX coordinator.

86.      As a direct and proximate result of Defendant SSSD's violation of Child Doe's rights under Title IX, Child Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

87.      Plaintiff is entitled to attorney fees and costs against Defendants.

### SECOND CAUSE OF ACTION

### Knowledge of Student on Student Sexual Assault/Harassment

### Violation of Fourteenth Amendment Under 42 U.S.C. § 1983
### *(Against Defendants Larsen, Powell, Jackson, and Anderson)*

88.      Plaintiff incorporates by reference all other paragraphs herein.

89.       The Fourteenth Amendment to the U.S. Constitution provides in relevant part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

90.     42 U.S.C. § 1983 creates a cause of action for damages and injunctive relief against any person who, under color of law, deprives any person of "rights, privileges, or immunities secured by the Constitution and laws," including the Equal Protection Clause.

91.     An individual school official violates the Equal Protection Clause and is subject to a claim under § 1983 where the official exhibits "deliberate indifference to known sexual harassment." *Murrell v. School District No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999).

92.     In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the U.S. Supreme Court recognized that a municipality may be held liable for damages under § 1983.

93.     Applying *Monell*, the Tenth Circuit in *Murrell* explained that a school district may be liable for student-on-student sexual harassment under § 1983 when a school "employee's discriminatory actions are representative of an official policy or custom of the [school district], or are taken by an official with final policy making authority." 186 F.3d at 1249.

94.     Child Doe has a Fourteenth Amendment right as a public-school student to equal protection of the laws.

95.     Child Doe further has the right of equal access to an educational environment free from harassment and discrimination (i.e., sexual assault) on the basis of sex.

96.     Defendants Larsen, Powell, Jackson, and Anderson were at all relevant times state actors, acting under color of state law.

97.     Defendants Larsen, Powell, Jackson, and Anderson were obligated to address known student-on-student sexual harassment, including sexual assault.

98.     Prior to Child Doe's assault, Defendants Larsen, Powell, Jackson, and Anderson had actual knowledge that other students had experienced sexual assaults and

harassment at GVHS based on, *inter alia*, at least 15 other reports by students who had witnessed abuse by Students 1, 2 and 3.

99.     Defendants Larsen, Powell, Jackson, and Anderson had actual knowledge that Child Doe was not the only male student subjected to sexual assault and harassment by other male students, based on, *inter alia*, at least 15 other reports by students who had witnessed abuse by Students 1, 2, and 3.

100.    Defendants Larsen, Powell, Jackson, and Anderson, by their acts and omissions, created a hostile educational climate where student-on-student sexual assaults and harassment were consciously tolerated.  This encouraged repeated sexual assault and harassment, which proximately caused injuries to Child Doe.

101.    Defendants Larsen, Powell, Jackson, and Anderson violated Child Doe's right to equal protection of the laws on the basis of his sex by acting with deliberate indifference to Child Doe's reports of sexual assault and harassment, as well as to the sexually hostile education environment in which Child Doe suffered because of their failure to take meaningful corrective action.

102.    Defendants Larsen, Powell, Jackson, and Anderson's deliberate indifference included the matters set forth above, as well as at least the following:

a)      Refusing to treat Child Doe's reports of forcible face rubbing of another student's penis, testicles, and bottom by male students as reports of sexual assault;

b)      Characterizing the sexual assaults Child Doe reported as normal "horseplay" or "boys-will-be-boys";

c)      Refusing to investigate Child Doe's reports of sexual assault, instead investigating them as "accidental" or "incidental" or "horseplay";

d)      Acknowledging or implying that they would treat reports of this type of conduct differently and would have called the police if the victim had been a female student;

e)      Creating a hostile educational climate that tolerates student-on-student sexual assault, harassment, retaliation and threats of bodily harm;

f)      Prioritizing the athletic careers of the accused male students over Child Doe's safety and education, and over their obligation to conduct an appropriate investigation into Child Doe's reports of sexual assault, harassment, retaliation, and threats of bodily harm;

g)      Deciding not to investigate or seriously discipline students who subjected Child Doe to severe and pervasive verbal harassment for being sexually assaulted and reporting it;

h)      Failing to appropriately discipline the students involved in sexually assaulting Child Doe;

i)      Failing to offer, provide, recommend, or coordinate psychological, counseling, and academic assistance and services to Child Doe after he reported the sexual assaults, harassment, retaliation, and threats;

j)      Failing to take meaningful action to correct the conditions causing the sexual harassment and to prevent recurrence of the harassment;

k)      Failing to report prior suspected sexual assault in violation of, and as mandated by, the District Policy;

l)      Failing to provide adequate training for administrators and employees on sexual harassment and assault, retaliation, and mandatory reporting;

m)      Failing to follow and enforce the District's Policy on "bullying" and other forms of harassment, intimidation and bullying when the perpetrators and victims were male students; and

n)      Failing to follow and enforce the District's prohibition of sexual harassment when the perpetrators and victims were male students.

103.    As a direct and proximate result of Defendants Larsen, Powell, Jackson, and Anderson's violation of Child Doe's equal protection rights under the Fourteenth Amendment, Child Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

104.    Such violation of Plaintiff's rights is actionable under 42 U.S.C. §1983, and Plaintiff is entitled to judgment against Defendants under that section for damages in an amount to be proved at trial.

105.    Plaintiff is entitled to attorney fees and costs against Defendants under 42 U.S.C. §1988.

106.    This violation was intentional, malicious, and/or reckless, and Defendants are therefore subject to punitive damages.

**THIRD CAUSE OF ACTION**

**Unconstitutional Policies, Practices, Procedures, Customs, and/or Training**

**Cognizable Under 42 U.S.C. § 1983**
***Against Defendant South Sanpete Schools***

107.    Plaintiff incorporates by reference all preceding paragraphs as if fully stated here.

108.    SSSD had a duty to have in place constitutional policies, practices, procedures, customs, and training to ensure its employees were trained and prepared to handle situations involving student-on-student bullying, and specifically sexual harassment/assault in their school district.

109.    The Fourteenth Amendment deprivations suffered by Plaintiff are proximate results of the constitutionally deficient policies, procedures, practices, training, and/or customs designed, implemented, enforced, and maintained by SSSD, in that SSSD has maintained polices, practices, procedures, customs, and training involving student-on-student bullying that lead to employees violating the protected constitutional rights of citizens.

110.    Since *Monell v. New York City Department of Social Services,* it has been clearly established that municipalities may be found liable under § 1983 where a municipal policy, practice, procedure, or custom causes a deprivation of federal rights.

111.    The State of Utah has defined "Bullying" in its Code as:

> [A] student intentionally committing a written, verbal, or physical act against a . . . student that a reasonable person under the circumstances should know or reasonably foresee will have the effect of:
> a) causing physical or emotional harm to the . . . student;
> b) causing damage to the . . . student's property;
> c) placing the . . . student in reasonable fear of:
>    (i)      harm to the . . . student's physical or emotional well-being; or

(ii)    damage to the . . . student's property;

d) creating a hostile, threatening, humiliating, or abusive educational environment due to:

(i)    the pervasiveness, persistence, or severity of the actions; or

(ii)    a power differential between the bully and the target; or

e) substantially interfering with a student having a safe school environment that is necessary to facilitate educational performance, opportunities, or benefits.

UTAH CODE ANN. § 53G-9-601.

112.    School Districts are required to adopt and implement policies in accordance with the code, and are further required to train District Employees with regard to these policies.

113.    SSSD adopted the following definition of bullying: "abusive conduct, intentionally or knowingly committing an act that is done for the purpose of placing a . . . student in fear of physical harm. . . ."  See SSSD Policy (Bullying Doc.).

114.    The policy further states:

The following constitutes [sic] acts of bullying, regardless of whether the person against whom the conduct is committed directed, consented, or agreed to the conduct:

a)  "Abusive conduct" . . .;

b)  endangerment to the physical health or safety of a . . . student;

c)  brutality of a physical nature such as whipping, beating, branding, poking, hitting, tripping, shoving, calisthenics, bruising, electric shocking, placing of a harmful substance on the body, or exposure to the elements to a . . . student;

d) forced or unwilling consumption of any food, liquor, drug, or other substance by a . . . student;

e)  ***forced or coerced act of a sexual nature or with sexual connotations such as asking prospective or active team members to remove articles of clothing or expose or touch private areas of the body***;

f)  physical activity that endangers the physical health and safety of a . . . student;

g)  ***physically obstructing a . . . or student's freedom to move***;

h)  ***psychological bullying*** that includes, but is not limited to, socially isolating an individual, demeaning or sarcastic comments, gestures, and threatening comments and behavior; or

i)  verbal and/or written bullying which includes, but is not limited to: name calling, mean teasing, spreading false rumors, intimidation, ***sexual comments,***

> *harassing, and threatening comments* and behavior that is communicated
> verbally or in writing, including the use of electronic media (i.e., "cyber
> bullying").

See Exhibit 1, SSSD Policy (Bullying Doc.) (emphasis added).

115. The Superintendent is responsible for enforcing the SSSD Policy and developing procedures that provide for, among other things, prompt investigation of harassment allegations; expeditious correction of the conditions causing the harassment; initiation of appropriate corrective actions; and identification and enactment of methods to prevent recurrence of the harassment. *See* South Sanpete School District Board of Education Bullying Policy at 5-22-05 (Bullying, Cyber Bullying, Harassment, and Hazing) Feb. 07, 2017.

116. Despite having this policy in place at all relevant times to this action, SSSD had unconstitutional customs and practices of:

a) failing to appropriately investigate and respond to reports of student-on-student sexual harassment, including sexual assault;

b) failing to enforce its policies prohibiting sexual bullying and harassment when the perpetrators and victims are male students; and

c) failing to adequately train District administrators and employees on how to recognize, address, and prevent sexual harassment of its students.

117. The District followed these unconstitutional customs, practices, and/or policies not only with regard to Child Doe, but also with regard to the sexual harassment of other male students at GVHS.

118. The District's unconstitutional customs, practices, policies and/or lack of training constituted disparate treatment of male students and had a disparate impact on male students.

119. At all relevant times, Defendants Larsen, Powell, Jackson and Anderson were policymakers who implemented and enforced the District's unconstitutional customs, practices, and/or policies.

120. At all relevant times, Defendant Larsen had final policymaking authority regarding the District's Policy, including, but not limited to, its policy prohibiting harassment and bullying.

121. At all relevant times, Defendant Larsen was responsible for enforcing the District's Policy and developing procedures to provide for, among other things, prompt investigation of harassment allegations; expeditious correction of the conditions causing the harassment; initiation of appropriate corrective actions; and identification and enactment of methods to prevent recurrence of the harassment.

122. Defendants Larsen, Powell, and Jackson violated the District's Policy in response to Child Doe and other students reports of sexual harassment and bullying.

123. Defendants Larsen, Powell, Jackson and Anderson acted with deliberate indifference to over 15 prior reports of student-on-student sexual harassment and bullying, including Child Doe's reports.

124. The customs, practices, and/or policies of the Defendants, including the District, Larsen, Powell, Anderson and Jackson, for responding to reports of student-on-student sexual harassment and bullying, such as Child Doe's reports, were so clearly inadequate that they give rise to a reasonable inference that the Defendants consciously acquiesced in the harassment and bullying.

125.    The failure of Defendants to respond appropriately to reports of student-on-student sexual harassment and bullying caused Child Doe to be subjected to repeated sexual harassment and bullying, including sexual assault.

126.    The District's failure to adequately train Defendants Larsen, Powell, Jackson, Anderson and other District employees on how to recognize, address, and prevent sexual harassment of its students caused Child Doe to be subjected to repeated sexual harassment and bullying, including sexual assault.

127.    If the District's training had been adequate, Defendants Larsen, Powell, Jackson and Anderson would have, *inter alia*:

a)    Treated Child Doe's reports of forcible face rubbing of another student's penis, testicles, and bottom by male students as reports of sexual assault;

b)    Characterized the conduct Child Doe reported as sexual assault, rather than normal "horseplay" or "boys-will-be-boys";

c)    Notified local law enforcement of the conduct and referred for potential criminal investigation; and

d)    Taken meaningful corrective action to prevent future recurrences and to permit Child Doe and other students to continue their education in a safe environment.

128.    As a direct and proximate result of the Defendants' violation of Child Doe's equal protection rights under the Fourteenth Amendment, Child Doe has suffered and continues to suffer losses of educational opportunities and benefits, along with injuries, damages and losses, including, but not limited to: emotional distress, fear, anxiety and trauma; lost future earnings and earning capacity; and expenses for past and future medical and psychological care.

129.    Such violation of Plaintiff's rights is actionable under 42 U.S.C. §1983, and Plaintiff is entitled to judgment against Defendants under that section for damages in an amount to be proven at trial.

130.    Plaintiff is entitled to attorney fees and costs against Defendants under 42 U.S.C. §1988.

## JURY DEMAND

Pursuant to F.R.Civ.P. 38, Plaintiff demands a trial by jury for all issues herein.

## REQUESTS FOR RELIEF

**WHERFORE**, Plaintiff respectfully demands judgment against Defendants as follows:

1.    Compensatory damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's expenses incurred as a consequence of the sexual assault, harassment, retaliation and threats, and Defendants' failure to take meaningful corrective action.

2.    Damages for deprivation of equal access to the educational opportunities and benefits provided by SSSD.

3.    Damages for past, present and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life, and loss of future earnings and earning capacity.

4.    Punitive damages as allowed by law.

5.    Injunctive relief to be determined at trial requiring Defendants to comply with Title IX and the Fourteenth Amendment's Equal Protection Clause.

6.    Pre- and post-judgment interest.

7.      Costs and attorney fees pursuant to Title IX and pursuant to 42 U.S.C. §1988(b).

8.      Such other and further relief as the Court may deem just and proper.

DATED this 18th day of October 2018

**SYKES MCALLISTER LAW OFFICES, PLLC**

*/s/Robert B. Sykes*

ROBERT B. SYKES
ALYSON C. MCALLISTER
***Attorneys for Plaintiff***

27